Case and last case of the day is case number 4160901 in re the marriage of Janice and Kenneth Newton. And for the appellant we have Richard Hopp for the appellate Gary Dysker. Mr. Hopp, you may proceed. My name for the record is Richard W. Hopp. I am the attorney representing Kenneth Newton, the defendant appellant in this case. We are here on an appeal over a 513 educational expense, post-majority educational expense issue. I know everybody's familiar with it, so I'm not going to read you the statute or anything like that. In my brief, I did, however, point out that the statute changed January 1, 2016 and did point out that it is pretty much the same as what it was before that date. And the reason I did that is simply because all of the cases that I've cited are pre-January 1, 2016. They did put in and codify, I think, what we've already been doing, and that is retirement should be considered, possibility of retirement, the effect on it is one of the factors to be considered. I raised two issues in my brief. First is, and I just love this, the Pulaski case. I've never cited a case about 150 years old, and I did point that out as well. I enjoyed old cases at this point, and I had initially discarded it because I thought, that's old, nobody's going to go with that. I saw it cited with favor in other cases, so okay, here it is. And that deals with the issue of the free school, whatever that meant back in 1868 and what it is today. And of course, the argument that I make over that is that essentially, the child, Ashley, had a free ride for two years at Richland Community College. And that is, in my opinion, falling within the definition of a free school. And there's a more recent case that I cited in my brief that says, okay, you look at affordability. And I know Mr. Geisler has argued against my position, saying it is not always the cheapest alternative that is the best alternative. I agree with that. And I don't think just because in this day and age there's a free school, you have to go to it, there has to be some reason for it. However, if you look at his brief, and he cites a case that I agree with, Sussing v. Keller, it's on page 8 and 9 of his brief. And it's the bottom of page 8 and the start of page 9. And it says, there in quotes, when a child wants to attend an expensive school, I would say in comparison to Richland, when you look at the U of I, that's an expensive school, the petitioner must present evidence that, one, special programs or attributes of the school make the additional cost reasonable under the circumstances, or two, the more expensive school is necessary or more appropriate for the child. And I think that's an appropriate standard, and I think it's an appropriate standard in this case. In that case, what was the comparison? What kind of school versus what kind of school? I actually don't recall that. I honestly don't recall that. Because expensive, that's a relevant term. It is, but when you go from free to $34,000, I think expensive is... But that's not exactly an apples-to-apples comparison, right? Because you're talking about a two-year school versus a four-year school. What would happen in years three and four under your scenario? Okay, that's a reasonable question, very reasonable. And I think it's addressed in my brief. Number one, Richland is a two-year program, and we have attached as an exhibit, and I've referenced that in my brief, a guaranteed contractual transferability of credits obtained at Richland to the University of Illinois. So you can attend Richland Community College and know that your credit hours are going to transfer hour-per-hour, grade-per-grade, over to the U of I. So when we look at that, my client's proposal was spend a year, spend two years at Richland, then go to the U of I. It would cut the cost for everyone, and there is a guaranteed transferability. And I've attached that contract as an exhibit. It was used in the trial court. So that was our proposal, to spend a year or two. Back to what I was looking at in terms of special attributes that makes this more important, the only two that are cited by Mr. Geisler is one, being in a four-year school is somehow beneficial. But there was no real evidence on that. I guess maybe we can assume that being in a four-year school or living on campus might be beneficial, but I'm not sure how that would compare to being two years on campus as opposed to four years on campus. Please note, when you graduate with a bachelor's degree, it's still the University of Illinois. It's not Richland Community College and the University of Illinois. Secondly, he cites, this girl was going into food science. That there are seven required food science courses that have to be taken in the first two years. And my client went to Richland, investigated it, talked to a counselor. Gary said, that's not enough, you should have brought in documentation. Okay, but on the other side, as you look from the case that he cited, the child wants to attend, the petitioner must present the evidence. His client acknowledged on the witness stand, she made no investigation of Richland Community College. Once the child said, I want to go to the U of I, that's where she was going to go. Mother enrolled the child in the U of I before the hearing and made no investigation. My guy says, look, there's 120 food science scholarships offered by ADM, which by the way is right next door. And they have food science courses. They say, no, we're not sure, we think she can only take general courses. But there was no investigation, no information, and the burden of proof was not met. So I'm suggesting to you that they have not met the burden required to show benefit, special benefit, to justify the difference in cost. We're talking $68,000 in a two-year period, which could have been absolutely free. And if they applied for the scholarship that was available, there would be $2,000 per year for the third and fourth year that could be used in any other public state school. Now, after the first two years, my client said, be happy to divide this a third. That was our suggestion. Why wasn't the trial judge convinced? That's a really good question. Thank you. I questioned that myself when I heard his decision because he had made a comment. I don't know if it's in the record or not, but I do remember his comment. It will be difficult for these folks to afford, but I think, you know, we can do it. How much weight is given to the child's preference, to the student's preference? I, in this case, or in the appellate court. That's fine, or even in general, or both. Or in general? Yeah. I think that all of the cases basically say if someone makes up their mind that they're going to a particular school, that you really, if you're not part of the decision-making, and in this case my client was not, that is part of the record, you're stuck with it, provided that you can justify the expense and the second corollary on this, can the person afford it, which is my second issue. We don't have the money to pay for this. Well, Mr. Hoppe, let me ask you this. You mentioned the Sessom case and the two things it talks about, the petitioner presenting evidence that special programs are attributes of the school. Right. There seems to be, in this case, a suggestion that she will receive a superior education at the University of Illinois by going through their program, their food science program, for four years versus two at Richland, one at Richland or whatever, and then finishing out at the U of I. And then the other thing, the second factor, that the more expensive school is necessary or more appropriate for the child, that's pretty broad. But I do know that Judge Coryell mentioned that the child had worked hard, had good grades, and seemed to really put a lot of stock in the fact that this child wanted to go there, to kind of piggyback on what Justice Twinell was saying. So you're saying that evidence just wasn't there? No. I believe that both parties agree that she was a good student at Warrensburg High School, that she was in the upper at least quarter of the class. I don't remember if she was in the upper 10 percent of the class or not. Dad questioned the standards out at Warrensburg and because you could take tests over and make your better grade by doing it if you did it within a certain period of time. But I don't think anybody questioned the fact that the young lady was bright, had attended to her education. He did question, however, whether this is what she really wanted to do. And he cited a number of instances where she was going to go, I think, to an art school in Chicago and then someplace else on a different curriculum. And that perhaps it would be better to try to figure out if this is really what she wanted to do. Likewise, she had some ability to work internships, investigate with ADM, and she did none of that. And if this was truly her interest in something, we're going to spend $130,000 doing in four years. Maybe we better find that out. But I hope that I'm getting close to answering your question. Now, as far as the U of I goes, I'm a U of I grad. I'm certainly not going to disparage the university. There was some evidence that came in how valid it was that it was either the University of Illinois was either, I think, ninth in the world in terms of food science. But again, even Judge Correale said, well, you can go two years at Richland, but the degree is still the U of I. And does it matter whether you get your basic courses in Richland Community College or sitting at the University of Illinois? I can only relate back to when I was an undergraduate and went in and there's 350 people in this room. I'm not sure that I'm getting any better education than going to Richland Community College in that type of a setting for the basic courses. There's no question, I think, that obviously, and of course, Richland doesn't offer a bachelor's degree, that you have to finish it up at a four-year school. Some states, like Pennsylvania, for example, you can't go to Penn State University unless you're a football player in the band or something like that. Their freshman class is only like 3,000 students. But everybody else goes to these satellite colleges for the first two years. And their junior and senior classes are huge. So how we compare Richland and their teaching to the University of Illinois, again, that's like apples to oranges, like we were talking about here a moment ago. I don't know how to make that comparison without testing, without anything else, and none of that's in the record. But I certainly wouldn't disparage the U of I. Well, I know there was some suggestion that the child might have to go an additional year. I know your client disputed that. Correct. But that was suggested by Mr. Geisler's client. After no investigation at Richland Community College, which is what I'm saying here, where – okay, she said that. Just because she said it doesn't make it so, where is the Google search that would tell us that this is accurate? And the answer is it's not there. Well, was there an objection based on foundation? I mean, was that evidence that the trial court could consider? It – the way that it came in, I don't believe there was an objection to it, but the cross-examination was, did you do an investigation of Richland Community College? And the answer was emphatically no. And so you don't know whether they offer these courses or not. And so you – I think the evidence is there. It goes to the what is the weight that you put on it. And you're saying you shouldn't have given it any weight. In my opinion, no, but unfortunately it does appear in his decision, and there is parts of his decision that say, well, now if she goes to Richland for two years, she's going to have to spend five years in college, and that would cost her $60,000, which is the median salary for a food science graduate. I had a question about that. Would that have been an appropriate consideration, assuming the validity of the testimony about her having to go an extra year? Let's say she did have to go an extra year. Would the fact that she would be giving up one year of salary have been an appropriate consideration for the trial court in making this decision? Yes, I think the court can consider any factor. And when you consider that, you balance it against what are you going to have to borrow in terms of money, what are you going to saddle in student loans for the student, can the parents afford it, which is primarily one of the issues in Section 513. Affordability, and you're supposed to look at the ability to pay. My client's $169 a month negative financing, and his income just went down because he lost money on the VA benefit, disability benefit he was receiving due to the 18th birthday of the child. Yeah, I think the court can consider that. The question is, what is it based on? And of course, I apologize for interrupting, but one of the other things we said also suggests, okay, send her to Richland for one year. It would save $37,000. Then send her to the U of I for the third year. It's in the transcript in the testimony. This is an alternative. I also had testimony about could she not attend the U of I in the summer months and obtain these food science requirements? So we had any number of alternatives that were possible to get this child through this program. Go ahead, just in terms of your client's ability to retire. In the brief at page 9, you write that he was 47 years old and the effect of taking on this debt would prevent him from retiring forever. Was there additional evidence presented that would show if he had to take on this additional debt that it would push back his retirement by X number of years? In other words, was there specific evidence regarding the impact on retirement, other than this statement that he says I'm not going to be able to retire now ever? The only other information, financial information, we got into was he would have to borrow the money. He had no equity in his house. If he was saddled with an interest-bearing debt, be it to subsidize, that paying that debt back where he's already adjusted a break-even financial situation would literally prevent him from putting money back for retirement. I want to back up a little bit. In looking at the standard of review here and abuse of discretion, that's a very high standard to meet. And so it seems that we really have to start from the point of your position being that Richland was a free school. And you have this case that talks about that. But is it really free? And then considering the standard of review, although we might disagree or may have ruled differently, has that been met in abuse of discretion? Okay. Was it really a free school? Yes. Everybody agreed that she had a tuition waiver for two years. But there are costs other than tuition.  And she was eligible for another scholarship loan. A two-year scholarship. Yes, which would pay up to $2,000 per year. The parties agreed that the range of her costs, transportation, all of the rest of it, was somewhere between $3,300 and $3,700 for the two-year period. So with the other scholarship, which I... Okay. I have a disclosure to make here. Our daughter is at Richland as a trustee scholarship. And so I have a little knowledge about this. The sheer scholarship pays an additional $2,000 per semester once you transfer to a public school after you finish at Richland. The evidence that was in the courtroom, and I have no independent knowledge of a judge, unfortunately, like you, I don't, was that it would pay for up to another two years at a public college another $2,000. And I thought per year. I didn't think it was per semester. Per semester. All right. I stand corrected. But it does pay more at Richland. So you agree that she would still be responsible for books and fees that the trustee scholarship only covered tuition. Well, but there was another scholarship, Judge. And it is... Let me find it for you. I refer to it. She was eligible for it. Trustee scholarship paid two years of tuition, but there's also a Walter and Alice Shear scholarship. And that one was the one that would pay the additional $2,000 a year for up to four years if she went to a public school. But she did not apply for it. We gave her the information. The record shows she got it at least three days before it was due, and that was while we were in the courtroom. I think the hearing was June 27th. It was due by June 30th, but that was never applied for. My question is, are you saying that you presented evidence that the Shear scholarship would pay for her books and fees at Richland? Yes. I think that's in the record. I may be wrong about that, but that's what the testimony was, and I have no independent knowledge of it. I apologize for that. I just have to go by the record. We do, too. All right. Any other questions? I've got a yellow light here. I see none, but you will have rebuttal. Thank you, sir. Mr. Geisler? Good afternoon. May it please the Court, Mr. Hoppe. We start off with the proposition that the division of the educational expenses here was one-third, one-third, one-third, which seems to me that that rings with fairness because not only was the Court following an equal division between the mother and the father, but that the child had that equal obligation as well. And we look at, well, what about their relative incomes? And the father's income was $94,000 a year plus his VA disability, which was another $8,000 or so. But as Mr. Hoppe has stated, it is correct that upon the child reaching the age of 18, his VA benefits were reduced. But he was still earning $94,000 a year, whereas the mother was earning $74,000 a year, having the same obligation, and the child really having very modest income, no comparison whatsoever, and yet the child was accepting the same responsibility. So the child was going to have to borrow some money to pay her share. There was testimony in the transcript about the Parents Plus Loan Program where each of the parents could borrow their share. So my suggestion is, and my position is, is that he did, the father did have the ability to pay his one-third. He may have had to borrow the money, but all the parties here were in the same. Does that's what the statute says when it says the ability to afford something is the ability to obtain a loan to finance it? I think that that's one of the possible, yes, that's one of the possible avenues of getting the money. I don't think that you have to have the money in your pocket. Some parents are going to save the money up, and they are going to have the money, but some of the parents are not. And so what happens is they have to go out and borrow the money. But I think when you're working on a full-time basis and you're, you know, in your 40s, certainly you have that ability. I mean, it's not as if this obligation just suddenly pops onto the scene. It's an obligation that obviously was forthcoming. And he acknowledges that he didn't have any problem with that division with regards to the third and fourth years. His objection is really about, he thinks that the child should have gone to Richland. And yet he admitted on cross-examination that he had suggested that the child look into the University of Florida. The difference between the child going to Richland and the child going to the University of Illinois is more than just simply that the University of Illinois is a more prestigious place to go to school. It is the fact that this child, this student was going into the food science program, which is a very specialized program. Part of the exhibits included the courses that the child would have to take. You have to complete 130 hours within the four years. And if you follow the University of Illinois curriculum, the last two years, they're going to have you taking essentially all food science programs. And you have to take seven food science programs in the first two years. The testimony of the mother was, well, the child would only be taking general education courses. So yes, general education courses might have transferred, but then the child still had the obligation to take seven courses. And it was our position, and it was a position adopted by the court, well, if that's the case, then this child is going to end up having to go three years to the University of Illinois after having gone two years to Richland. Mr. Hopps said on cross-examination that your client agreed she did not research that in terms of only being able to take general education courses at Richland the first two years. I think on direct examination she testified that that was all that the child would be able to take. And then I think on cross-examination Mr. Hopps did ask a question, something along the lines of, well, you don't know whether there's food science courses available or not. I think she said she hadn't researched. The point being that the child in the testimony and admitted by the father was that this child stood in a position to earn, according to his position, $64,000 a year median income. Upon graduation, my question of him was, isn't it true that the median income for a food science grad is $102,000? He said, no, it was $64,000. And the position adopted by the trial court was that this is a child that stands in a position to have a very serious income upon graduating, and for the child to be deprived of going directly into that, and having to go get another year of undergrad school, doesn't make sense. So essentially, and by the way, the Sussan v. Keller case involved a situation where the court was comparing two automotive technology schools, one being at a community college in Illinois and the other going to a private school in Indianapolis. And the court divided the expense up, one-third, one-third, one-third, based upon the private school in Indianapolis. And after appeal, it was sent back that the division should be based upon the less expensive school, because there was no basis to believe that one school was better than the other. It was Apple versus Apple. In this case, we don't have Apple versus Apple. In this case, we have the University of Illinois, which is one of the top 15 food science programs in the entire United States, compared to going to Richland Community College. We believe that the basis of the court adopting that was sufficient because the child, we think the evidence established that the child wasn't going to be able to take those seven courses. But aside from that, I think as a second basis, it is that the University of Illinois, by putting the child there in that particular program and being exposed to that environment and those instructors gave the child a better education, made the child better qualified to go out and compete in that particular chosen field. So I think the court had the ability to look at both of the two options, and the court did. And the court followed the suggestion of the mother and the child. And I think at this point, it is not an abuse of discretion for the position that the court took. Thank you. Okay, thank you. Is there any rebuttal? Mr. Hub, did I understand you, before you begin your argument, when you were making your original argument to this court that Penn State only takes 3,000 freshmen? It's 3,3300. The reason I know that is my daughter's lifelong best friend went to Penn State, and she was in the band. And she was able to go four years at the college station, I believe it is. But she was the one that advised me that you could not attend Penn State unless you're a football player, scholarship athlete, or they needed you for some reason. Okay. Mr. Geiser, I don't think this is going to have any bearing on how this court decides. It's interesting. It kind of got past me. Please do your rebuttal. Okay. But I did think that was an interesting thing. And we have all these community colleges. It seems like a pretty logical thing to do, but I just brought that up. Anyhow, I want to point out that all these cases say that 513 is permissive. It's not mandatory. So when we look at this case, and I understand Mr. Geiser is saying the third, third, third, that sounds fair. Sure. But understand with my argument, I discounted a bunch of retirement income. Mom's household income was $100,000 for two people. Dad's was 90-some. He got a bonus, which was not guaranteed. Depends upon performance in the company and his. His wife was a stay-at-home mom. She had a three-year-old child with a congenital kidney issue involving surgery. Another hospital stay rejected. Running a 167 negative deficit. He said, I make that up with my tax refund every year. I get money that I put back, and then I can pay the bills. Now, the idea is, your point, well, if you have the ability to borrow money, do you have to go out and do it? Okay. I had a lot of people when I was in practice and still doing bankruptcy that thought that was a wonderful idea. And then I did their bankruptcies. How's he going to pay this back? There's got to be a payment for that parent plus loan. Where is it in his budget? It's not. And the law specifically says you've got to consider that, and I don't see it. I don't even know how he's going to do it with the third and fourth year, but he's volunteered for that one. The other thing is, we believe the U of I is better. Okay. Maybe we do, but where are the facts to support it? There's no testimony in the record on that. And how we believe that if you spend the first two years at the U of I, you're going to be better off than taking college classes at Richland. I don't see any facts to support that either. My client did make this statement. Maybe you ought to consider the University of Florida. Then Mr. Geisler left off the other part. If you can obtain a scholarship, and please understand that the U of I, the only scholarship money she had was from the Warrensburg Booster Club of $1,000, which could go anywhere, and $127, I believe, from the bowling league. She got no additional financial benefit. Okay. So I just wanted to point those things out for you in my rebuttal. Thank you very much. All right. Thanks to both of you. The case is submitted, and the court stands in recess until further call.